Our fifth case for this morning is United States v. Calvin Brown. Mr. Bernstein. And may it please the court. As I reviewed the cases dealing with attempted possession to deliver that this court has issued since the Say case in 1990, and which I think are at page 16 of my brief, there One very important constant was that someone actually saw the defendant make some positive step towards commission of an offense, either in the form of a Mirandi statement from a defendant or from a confederate or an undercover officer or a confidential informant. There was someone that has seen something. Ms. Laird. But why would this be different from all other law where circumstantial proof is permissible? Because it seems to me if there's a charge of attempted possession with intent to distribute a controlled substance, here methamphetamine, and we have evidence, much of it circumstantial, but we have evidence that the person took enough steps toward doing that to acquire the drug that is then going to be distributed, and a rational finder of fact could understand that this was not a personal use amount of the drug, I mean, that looks like a big substantial step toward attempted possession with intent to distribute methamphetamine. By a big substantial. So why is it? I mean, like getting it all ready to distribute. Why is that not enough? And, well, Judge, I think you're probably referring then to the parts of the recordings where there's a mention of White Boy and others writing down the on deck and the overdosing. And also give him a quad, you know, I mean, Hammond tells Perry to give Oxendean a half and he mentions that he owes Brown, I mean, that there is that whole exchange, plus we have the five minute stop off in somebody's house, you know, where he goes in, and I forget whose house it is, Perry's house. Well, the problem is this, Judge, I agree, the possession is one thing. The delivery. And why isn't the possession like a substantial step, possession of commercial quantities, if you will. Possession beyond personal use quantities. Why isn't that a very substantial step toward the completion of the offense, which is the actual distribution? Now, it's just possession with intent to distribute, so maybe you don't even have to go as far as I'm saying. I think there are several reasons why not. First in the quantity itself. In cross-examination, Special Agent Wheely testified that the average methamphetamine user uses between two and four grams per day. If you multiply that out by the 14 grams in each sale, this methamphetamine could have easily been used within a period of three and a half to seven days for both sales. In addition to that, there is nothing in the record to show that Calvin Brown attempted to negotiate a deal to sell with anyone. There's nothing in the record that he attempted to meet someone for delivery. There's nothing in the record to show that he was on his way either to or from and possessed either narcotics or money. But he does refer to having, I'll use his colorful language, but he has some people on deck. You know, he's got customers waiting, Wheely says is the meaning of that. And there's a lot of, it's not like ironclad, but it seems to me to be good circumstantial evidence that he's acquiring drugs and his intent is to distribute those drugs, even though the government doesn't get as far as proving actual distribution. Well Judge, you know you have a decision where it required more than talk in order to substantiate a conviction. Absolutely, but don't we have more than talk here? Well I don't think so. I think what we have, as I've seen this case, we have a case that's stretched the limits of what can we establish without a defendant actually be seen doing anything. We have a small window of three weeks of an investigation and the special agent testified that he wished he had spent more time on the case investigating Mr. Brown. And you, in fact, have a decision out of this circuit where it suggested that the investigation should have gone further, for instance. And I say that for this reason. He never delivered meth to anyone, and in fact, he was not fronted because of the meth he purchased. Some of the other people were fronting and he wasn't doing that. And it just seems that if I were the special agent and one of my officers came to me and said, okay, I've got these four points that we've pulled off of the recordings, why don't we go find the woman who was overdosed? That should be simple enough. He could have dispatched someone to Terre Haute's Regional Hospital, found the woman, and asked her where did she get the narcotics. Perhaps even the doctors might have even asked it already and provided the answer. Another example would be if I were the agent, let's find out who White Boy is or let's see if we can come up with Calvin doing something. They had no trouble finding him when it was time to arrest him. He didn't run, and the agent testified that he was arrested along with everyone else. They knew who he was, they knew where he was. So they had access, they just didn't develop it. I mean, we're speaking of beyond a reasonable... But the elements are specific intent, right, to commit the crime, and taking a substantial step toward its completion. Now I know you've made the argument in your brief that there is no attempt to fence here but 846 has been understood to create an attempt to fence, and I think that's an uphill battle. Well, here's the practical reality of that. A client asked a lawyer to show the statute under which they're charged, and the lawyer brings in the substantive underlying statutes, brings in 846, brings in case law from this court, but no statute. It doesn't really exist. Show 846, why is that not enough? And because it's just a sentencing provision, Your Honor. No, it's not. It makes it a... It's like many other federal crimes that say, do this, here's the punishment, right? But it doesn't define attempt. It's left to the courts. Of course it does, and it doesn't define conspiracy either, right? But you're not suggesting conspiracy is unconstitutionally vague, are you? No. An attempt is a pretty well-established concept from the common law. Yes, there's some play at the edges, but let me ask you, Mr. Bernstein, is... Maybe this is simpler than I thought, but does the government have sufficient proof in this case of your client's actual possession of methamphetamine? No. Okay. What do they have? Our concession at trial. Which says? But it was assuming that he made these two purchases. Well, I'll take that back. On the tape recording, there is some indication that he acknowledges receiving the two deliveries. Okay. That's the extent of the evidence. Okay. So that's... I mean, it's out of his own mouth, and under circumstances where he's buying a half ounce of methamphetamine each time. So he's in actual possession of amounts that a jury could reasonably find for distribution. I don't understand what more is needed here. I don't understand what more would be needed here. I also don't understand why this wasn't charged as actual possession with intent to distribute, but that's a different question for Mr. Ong. But Your Honor, it just strikes me that delivery is a much different mindset. You're crossing a more substantial line if you deliver than if you possess. There was no evidence that he wasn't an addict, and there was no evidence that he was an addict. So we don't really know how that relatively small amount of methamphetamine was used. I had a demonstrative exhibited trial of a tube that was two inches tall and one half inch wide that held precisely 14 grams of sugar, which I equated to the meth. And again, from the mathematics, we know it can be consumed, but we don't know it necessarily is delivered. Okay. It doesn't, he's not charged with the completed offense of actual distribution. He's not even charged with the completed offense of possession with intent to distribute. It's just, which again, I don't quite understand. But I've got to say, it does seem to me that the inference of intent to distribute is reasonable from the quantity. And with that, I don't, I have real trouble with that. Respond to Judge Hamilton if you would like, and then we'll tie this up. Thank you. I think we all recognize that you and Mr. Ong and all of us have seen a lot stronger, bigger drug cases before. This is at the tail end. And it is. Okay. But why is it not legally sufficient? Because it still requires evidence beyond a reasonable doubt. And while it's evidence, my argument is it never rose to the level of being beyond a reasonable doubt in this case. And in fact, the judge even said as much. She said, Her Honor said that all Mr. Brown did was simply make two purchases of narcotics and nothing more. That's in her pronouncement of judgment, which is in the back of your brief at page 245, I believe. All right. Thank you very much, Mr. Bernstein. Thank you. Mr. Ong. May it please the Court, Winfield Ong for the United States. I'll just jump right in here and say that this was charged as an attempt as a result of overthinking by an inexperienced drug prosecutor, that being me. In retrospect, it was clearly a mistake and should have been charged as in possession with intent. I want to just point out two facts that I don't think the record does sufficient justice to. First of all, there is corroboration of Mr. Brown's purchase and distribution that he arrived. There's a video of him arriving at the house. This is the Perry House incident? Yes, Your Honor. Exactly contemporaneous with the conversation with Hammond that he is going to go buy methamphetamine. He arrives at the house within an hour or so of that conversation, goes inside and stays for five minutes and leaves. And also Ms. Oxendine who testified, she's intercepted in the same time being referred to as coming to pick up methamphetamine for sale. She also testified that she arrived at that house contemporaneous with Mr. Brown within that same context to pick up methamphetamine and bought methamphetamine for distribution. I'd also note that on the amounts, I disagree with Mr. Bernstein's characterization about amounts. I think both cooperators testified that they would typically buy roughly a quarter or a third of a gram for personal use. What the record doesn't capture is what I would suggest was compelling testimony from street-level dealers of methamphetamine, tragic experiences, lengthy tragic experiences with street-level dealing, and compelling testimony that the judge credited that a half ounce was not only inconsistent with distribution but was just implausible. You mean personal use? Excuse me, with personal use. I think they both thought that if you'd seen their testimony was preposterous. Completely inconsistent with their experiences. So your proof of amount is what you're proffering here as proof that there was intent to distribute. You wouldn't have had that much, basically, if you weren't intending to distribute it. Yes. And then, of course, the wiretap testimony, which is, of course, circumstantial evidence, but we submit was, in the end, pretty compelling. Because there is possession. I mean, it's not attempted possession. It may be attempted intent to distribute or something. Yes. That this was used for distribution, along with, then, all the conversations that strongly suggest that that is exactly what Mr. Brown was selling, just like the cooperators testified you were likely to do with a half ounce of methamphetamine. I would rest on the government's brief. Do I have anything to add to the legal question about the viability of attempt? Did the CI testify in this case? No. Okay. Was he available to testify? Or was that... Well, I don't know that there was an informant. Okay. Yeah. Maybe I missed that. Okay. No, I don't... That's not how the wiretap was initiated, I know. Okay. Thank you. Okay. Thank you very much. I think you were just about out of time, but if you have one final minute, you can give it to us, Mr. Bernstein. I would point out that Ms. Oxendine has no connection whatsoever with Mr. Brown, and there really isn't necessarily, I mean, it's just logically not consistent to equate her who doesn't know Mr. Brown, or ever having been around Mr. Brown, as having the same financial resources, or lack thereof, as Mr. Brown might have had. And it's extremely important that the fronting issue, which happens in these cases over and over and over again, did not occur in this case. He made these two purchases, allegedly, and he paid for them, allegedly. That's what you're looking at. When he came out of Mr. Perry's house, we don't know what they discussed. We don't know if it was just a purchase in his house. We don't know if they discussed delivery. The truth of the matter is, we really don't know more than we know. And that's the argument why it doesn't rise to beyond a reasonable doubt. And with that, I'll say thank you. All right. Well, thank you, and you have our thanks as well. I understand you took this by appointment. We appreciate your service to the court and to your clients. Thanks as well to the government.